<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUIS MOREL, LORENA MOREL, *his wife*, | |
| Plaintiffs, | Civil Action No. 2:11-06726 (SDW) (MCA) |
| v. | **OPINION** |
| UNITED RENTALS, PEMCO, ERIC PEEK, WES INDUSTRIES, INC., ABC, INC. (1-25), JOHN DOE (1-25), JLG INDUSTRIES, INC., | **March 19, 2014** |
| Defendants. | |

**WIGENTON**, District Judge.

Before this Court is Defendants Eric Peek ("Peek") and Wes Industries, Inc.'s ("WES") (collectively, "Defendants") Summary Judgment Motion. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **DENIES** Defendants' Summary Judgment Motion.

I.   FACTUAL AND PROCEDURAL BACKGROUND

   A.   The Parties

Plaintiffs Luis Morel ("Morel") and his wife, Lorena Morel (collectively, "Plaintiffs"), are citizens of the state of New Jersey. (*See generally*, Am. Compl.) At the time of his injury, Morel was a twenty-eight (28) year old hydraulic equipment repair technician employed by non-party Pirtek Hydraulic Hose Service ("Pirtek"). (Defs.' Statement of Undisputed Material Facts

("SUF") ¶¶ 2, 7.)  Defendant WES Industries, Inc. ("WES") is a Florida corporation, with its principal place of business in Florida, engaged in the business of installing solar equipment systems.  (Dkt. No. 1, Joint Notice of Removal ("NOR"), ¶ 16; Defs.'s SUF ¶ 8.)  Defendant Eric Peek ("Peek") is a citizen of the state of Florida and is a WES employee.  (NOR ¶ 17; Defs.' SUF ¶ 12.)

### B. Facts

In February 2011, WES was involved in the installation of a solar power system for a cellular tower at a facility in Lakewood, NJ.  (Defs.' SUF ¶ 8.)  In connection with the installation project, WES rented a hydraulic JLG Gradall 544D-10 Lull (the "Lull") from non-party United Rentals ("United").  (Defs.' SUF ¶ 4.)  The rental agreement required WES to notify United if the Lull required repair, and mandated United's repair or replacement of the equipment as needed.  (*Id*. ¶ 4.)  Separately, United maintained a contractual relationship with non-party Pirtek under which Pirtek would repair United's equipment, including the Lull.  (*Id*. ¶ 6.)  On or around February 10, 2011, a WES employee informed United that the Lull had begun to leak hydraulic fluid during the workday.  (*Id*. ¶ 5.)  United, in turn, notified Pirtek that a hydraulic repair technician was needed to service the Lull.  (*Id*. ¶ 7.)  Morel was thereafter dispatched to the facility to repair the Lull.  (*Id*. ¶ 11.)  Once Morel arrived at the facility, Peek drove the Lull from the location of the ongoing work to the front of the site to allow Morel to service the Lull.  (*Id*. ¶ 12.)  It is important to note that WES paid for Peek to be trained to become a certified lull operator.  (*Id*.; *See* Defs.' Ex. D, Defendant Eric Peek Deposition at 23:3–19 (Aug. 23, 2012) (hereinafter, "Peek Dep.").)  Morel, on the other hand, was neither certified nor qualified to operate the Lull even though qualified to repair it.  (Defs.' SUF ¶ 13.)

In order to correctly diagnose the problem, Morel enlisted Peek's help to operate the Lull so Morel could troubleshoot it to determine the problem. (*Id*. ¶ 19.) Diagnosing the Lull's problem required that it be operated while a technician stood nearby observing the moving parts to identify the source of the hydraulic fluid leak. (*Id*. ¶¶ 16, 19.) Morel instructed Peek to start the machine and operate the forks attached to the machine. (*Id*. ¶ 17.) After determining that the source of the leak was a faulty "O-ring," Morel asked Peek to start the Lull again, raise the boom, and then turn the machine off. (*Id*. ¶ 21.) With respect to the repair of heavy machinery, like the Lull, Pirtek's standard of care is similar to that of the industry: prior to commencing repair, the machine must be "locked out/tagged out." (*Id*. ¶ 14.) To properly lock out/tag out a machine, the service technician must: (1) power down the machine; (2) place a placard on the steering column of the machine indicating that the machine is out of service for repair; and (3) keep the keys to the ignition in his or her pocket throughout the repair. (*Id*.) It is undisputed that Morel failed to lock out/tag out the Lull during his repair of it. (*Id*. ¶ 15.)

Morel also requested Peek's assistance during the course of the Lull's repair. (*Id*. ¶ 20.) Morel directed Peek to hold a wrench in place so that Morel could loosen a fitting in order to replace the faulty "O-ring." (*Id*. ¶ 22; *See* Defs.' Ex. A, Plaintiff Luis Morel Deposition at 60:20–61:4; 76:6–15; 85:4–87:9 (Oct. 5, 2012) (hereinafter, "Morel Dep.").) After the "O-ring" was replaced, Morel directed Peek to operate the Lull so that Morel could verify that the leak had been corrected. (Defs.' SUF ¶ 27.) During this verification process, Morel inserted his hand into one of the Lull's "boom holes" to wipe away excess oil in order to confirm that the leak had been fixed. (*Id*. ¶¶ 30, 36-37.) Morel maintains that although the Lull's engine was running and Peek was at the controls, he inserted his hand into the boom hole because he had not given Peek a command to operate any part of the Lull. (*Id*. at 37.) Peek disagrees, maintaining that Morel had given him a

3

hand and arm signal to "boom out," that is, operate the Lull's boom. (Peek Dep. 88:8–89:10.) It is undisputed that the "boom out" caused a mechanical action inside the boom hole to occur, resulting in the amputation of Morel's left hand. (Defs.' SUF ¶ 1; Morel Dep. 101:8-21.)

Importantly, a placard was affixed immediately next to the boom hole that prominently warns of the possibility of severe injury if extremities are inserted into the boom hole. (Defs.' SUF ¶ 31.) The placard contains a picture of a hand that is trapped between two mechanically operated parallel bars that move in opposite directions, and it also includes the following admonition:

**WARNING**
**PINCH POINT**
**KEEP OUT**
REACHING INTO BOOM HOLES AND OTHER PINCH
POINTS COULD CAUSE SERIOUS INJURY OR DEATH

(*Id*.) It is undisputed that the boom hole at issue here contained the warning placard and that Morel had seen the placard in the past. (*Id*. ¶ 31, 34.) It is also undisputed that Morel understood and appreciated the risks associated with putting body parts into the boom hole while the Lull was in operation. (*Id*. ¶¶ 34, 40.) Finally, it is undisputed that the Lull did not need to be running for Morel to wipe away the excess oil and that he could have instructed Peek to turn off the Lull's engine prior to inserting his hand into the boom hole. (*Id*. ¶¶ 35, 41, 42.)

### C. Procedural History

On or about March 29, 2011, Plaintiffs filed a Complaint in the Superior Court of New Jersey, Law Division, Essex County against United, JLG Manufacturing, LLC ("JLG"), Gradall Industries, Inc. ("Gradall"), PEMCO, Peek, and WES. (NOR ¶ 1.) On or about June 15, 2011, Plaintiffs filed an Amended Complaint naming United, JLG, PEMCO, WES and Peek as defendants. (*Id*. ¶ 2.) In the Amended Complaint, Plaintiffs assert products liability claims against

United and JLG.  (Am. Compl., Count 1.)  In addition, Plaintiffs assert personal injury negligence claims against Peek and vicariously against WES as Peek's employer.  (*Id.* Count 2.)  They also assert personal injury premises liability claims against PEMCO.  (*Id.*)  Plaintiff Lorena Morel asserts a *per quod* loss of consortium claim against all defendants.  (*Id.* Count 3.)  On or about November 9, 2011, all parties voluntarily stipulated to discontinue their causes of action and cross-claims against PEMCO.  (NOR ¶ 12.)

On or around November 15, 2011, this matter was removed from the Superior Court of New Jersey, Essex County to the District Court for the District of New Jersey.  (Dkt. No. 1.)  On or about February 28, 2013, the remaining parties voluntarily stipulated to discontinue their causes of action and cross-claims against United and JLG, leaving only WES and Peek as defendants.  (Dkt. Nos. 33, 34.)

## II.  LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  *See Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).

The court may not weigh the evidence and determine the truth of the matter but rather should determine whether there is a genuine issue as to a material fact. *See Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in "a light most favorable" to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 521 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

### III.   DISCUSSION

Plaintiffs allege that Peek's negligence caused Morel's injury, and as Peek's employer, WES is vicariously liable for Peek's negligence. (*See generally*, Am. Compl.) In support of their summary judgment motion, Defendants argue that Plaintiffs cannot maintain their claims because Peek became a special employee of Morel and thus, is immune from Morel's negligence suit. (Defs.' Br. 8.) Alternatively, Defendants argue that New Jersey's comparative fault law entitles them to summary judgment. (*Id*. at 21.)

This Court first addresses Defendants' comparative fault argument. Defendants contend that the applicable standard of care "required Morel to power down any machine prior to making any repair, pocket the keys so that no one could energize the machine while a repair was ongoing and hang a repair placard to warn any passerby that the machine was out of service and under repair." (*Id*. at 19.) Defendants' argue that the undisputed evidence shows, and Morel admits, that he failed to adhere to the applicable standard of care when he stuck his hand into the boom hole

6

without locking out/tagging out the Lull. (*Id.* at 19-20.) Defendants' maintain that Plaintiffs' negligence in causing his injury was greater than fifty-one percent (51%), which bars any recovery by Plaintiff under New Jersey's comparative fault principles. (*Id*. at 21.)

New Jersey's Comparative Negligence Act (the "Comparative Negligence Act"), states as follows:

> Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought or was not greater than the combined negligence of the persons against whom recovery is sought. Any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering.

*N.J.S.A.* 2A:15-5.1. The purpose of the Comparative Negligence Act is to ameliorate the draconian effect of common law contributory negligence, which generally precluded a plaintiff from recovery if his negligence contributed to causing his or her injury. *Burt v. West Jersey Health Sys.*, 339 N.J. Super. 296, 305-06 (App. Div. 2001); *Schwarze v. Mulrooney*, 291 N.J. Super. 530, 538-39 (App. Div. 1996). The Contributory Negligence Act serves as a bar preventing a plaintiff from recovery if his negligence is greater than the negligence of the defendant(s). In this matter, genuine issues of material fact exist with regard to the amount of Morel's negligence. It is undisputed that Morel failed to lock out/tag out the Lull prior to repairing it, in violation of company and industry standard. (Defs.' SUF ¶¶ 14-15.) It is also undisputed that Morel inserted his hand into the boom hole while the Lull's engine was running and while Peek was at the controls. (*Id*. ¶ 29-30.) It is further undisputed that Morel was aware of the potential risk of harm from inserting his hand into the boom hole, and that a placard warning of the "pinch point" risks was affixed to the outside of the Lull, immediately adjacent to the boom hole. (*Id*. ¶ 34.)

Nevertheless, in viewing the facts in the light most favorable to Plaintiffs, the non-movants, a reasonable jury could determine that Peek's negligence was greater than or equal to Morel's negligence. Indeed, at deposition Morel testified that although the engine was running when he put his hand into the boom hole, his hand would not have been amputated but for Peek operating the Lull and "booming out." A reasonable jury could determine that by operating the Lull with Morel's hand in the boom hole, Peek's negligence was greater than Morel's. The fact finder's analysis of Peek's negligence is critically important given that Peek was trained and certified to operate the Lull. Moreover, genuine issues of material fact exist as to whether Morel instructed Peek to operate the Lull while his hand was in the boom hole. Morel maintains that he gave no such instruction while Peek contends that Morel did. (Defs.' SUF ¶¶ 26-37; Pls.' Response to Statement of Material Facts ¶¶ 29, 37.) This dispute goes to the heart of apportionment of the parties' negligence. *See N.J.S.A.* 2A:15-5.2-(a)(2) ("In all negligence actions and strict liability actions in which the question of liability is in dispute. . . the trier of fact shall [determine] [t]he extent, in the form of a percentage, of each party's negligence or fault.") Therefore, genuine issues of material fact exist and Defendants' motion is denied.

Second, Defendants' argument that Peek became Morel's special employee is without merit. New Jersey has adopted a five-prong fact-sensitive inquiry to determine whether a special employer-special employee relationship exists:

> (1) the employee has made a contract of hire, express or implied, with the special employer;
>
> (2) the work being done by the employee is essentially that of the special employer;
>
> (3) the special employer has the right to control the details of the work;
>
> (4) the special employer pays the employee's wages; and

> (5) the special employer has the power to hire, discharge or recall the employee.

*Kelly v. Geriatric and Med. Servs., Inc.*, 287 N.J. Super. 567, 571-72 (App. Div. 1996), *aff'd*, 147 N.J. 42 (1996). "Traditionally, the five factors are weighed to determine special employment. No single factor is 'necessarily dispositive, and not all five must be satisfied in order for a special employment relationship to exist.'" *Walrond v. County of Somerset*, 382 N.J. Super. 227, 236 (App. Div. 2006) (quoting *Marino v. Indus. Crating Co.*, 358 F.3d 241, 244 (3d Cir. 2004)).

The parties agree that factor four was not met because neither Morel nor his employer, Pirtek, paid Peek a wage. (Defs.' Br. 12; Pls.' Br. 8.) Furthermore, there was not a contract, either express or implied, between Morel and/or Pirtek and Peek. Pirtek was not aware that Morel had enlisted Peek's assistance in repairing the Lull until after Morel had suffered the injury. Additionally, simply because Morel sought the help of Peek to fix the Lull does not transform their relationship into a contractual one. All the elements of a contract—offer, acceptance, mutual assent to terms, and consideration—are missing. Thus, there was not a valid and enforceable contract between Morel and Peek. *See Murin v. Frapual Const. Co.*, 240 N.J. Super. 600, 608 (App. Div. 1990) ("An employee's consent is required because the employee loses certain rights along with those he gains when he enters a new employment relationship. . .When the question has been presented in this form, usually the courts have vigilantly insisted upon a showing of deliberate and informed consent by the employee before an employment relationship will be held to bar a common law suit.") Next, the second factor does not favor the existence of a special employment relationship either. With respect to this factor, New Jersey courts find that "absent evidence to the contrary, there is an inference that the employee remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the

general employer." *Id*. That Peek was assisting repair the Lull so that his employer, WES, could continue using the Lull in furtherance of its business belies the notion that the work Peek did was essentially that of Pirtek. Although Pirtek was contractually obligated to repair the Lull, Peek's assistance in repairing the Lull was still within his performance of "the business entrusted to him" by WES. This becomes apparent when it is considered that Peek's supervisor instructed him to drive the Lull to Morel's location in order for the Lull to be fixed. (Peek Dep. 46:19–47:16.) Further, Peek remained in the vicinity of Morel while he made the repairs and offered to assist in Morel's repair efforts. (*Id.*) Additionally, WES paid to have Peek trained to become a certified Lull operator. (*Id*. at 23:3–19.) Thus, the undisputed evidence demonstrates that Peek was furthering WES's business when he helped Morel repair the Lull.

      Finally, the remaining two factors—whether the special employer had the power to control the details of the employee's work and if it could hire, fire, or recall the special employee—are the only factors militating in favor of a special employment relationship. Indeed, the undisputed evidence shows that Morel directed Peek to start and turn off the Lull several times, operate the forks attached to the Lull, activate the boom in the Lull, and hold a particular wrench in place while Morel tightened a nearby bolt. (Defs.' SUF ¶¶ 17, 21-22, 27.) Moreover, at one point during the repair, Peek began to return to his regular duties at WES when Morel requested that Peek stay to continue assisting in the repair. (Peek Dep. 84:14–23.) As such, factors three and five of the special employer-special employee test are satisfied. Notwithstanding this, a weighing of the five factors tilts the balance against finding that a special employer-special employee relationship existed. In considering the totality of the circumstances, it is clear that Peek was not a special employee of either Morel or Pirtek. Therefore, New Jersey's rule barring employees from commencing occupational negligence actions against co-employees and employers is inapplicable

10

and Defendants' summary judgment motion on this basis is denied. *See Volb v. G.E. Capital Corp.*, 139 N.J. 110, 116-17 (1995) ("In short, co-workers cannot sue one another for negligence in the workplace.").

This Court notes in conclusion that since Defendants' summary judgment motion with respect to Morel's claims is denied, Defendants' summary judgment with respect to Lorena Morel's *per quod* loss of consortium claim is also denied.

## **CONCLUSION**

For the reasons stated above, Defendants' Summary Judgment Motion is denied.

s/ Susan D. Wigenton, U.S.D.J.

Orig:     Clerk
cc:       Judge Arleo
           Parties